IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **ROYAL AMERICAN CONSTRUCTION, INC.,** *Plaintiff,* | § § § § | |
| **V.** | § § | |
| **ROOFING DESIGNS BY JR, LLC dba ROOFING DESIGNS and INSURORS INDEMNITY COMPANY,** *Defendants.* | § § § § § § | **Civil Action File No. 4:21-cv-02440** |
| **AND** | § § § | **JURY TRIAL DEMANDED** |
| **ROOFING DESIGNS BY JR, LLC dba ROOFING DESIGNS** *Third-Party Plaintiff,* | § § § § | |
| **V.** | § § § | |
| **HARTFORD FIRE INSURANCE COMPANY** *Third-Party Defendant.* | § § § | |

## DECLARATION OF CHYNA GRAGG

Pursuant to 28 U.S.C. § 1746, I declare as follows:

1.     My name is Chynethia "Chyna" Gragg.  I am over 18 years of age, of sound mind and body, have never been convicted of a felony or crime of moral turpitude, and am otherwise competent to make this

CTG

declaration.  All facts stated in this declaration are within my personal knowledge and are true and correct, except where facts are noted upon information and belief.

2.     I am the sole member of Roofing Designs by JR, LLC ("Roofing Designs").

3.     At all times relevant to the facts in this declaration, Roofing Designs has been certified as a Minority Woman Small Business Enterprise ("MWSBE") by the City of Houston's Office of Business Opportunity ("OBO").

4.     By virtue of my experience in construction and Roofing Designs' certification as an MWSBE, I am familiar with the requirements for use of MWSBEs in certain projects.  In federally funded projects, prime contractors must use MWSBEs for a percentage of the work.

5.     The City of Houston's Housing and Community Development Department ("HCDD") oversees compliance issues for work performed by MWSBEs.   They have very technical and often confusing requirements.

6.     Because the city's compliance procedures are so complicated, I use Vanessa Stokes of Paperwork Consulting to help Roofing Designs.  In my experience, attorneys are not familiar with these requirements.



7.    Prior to May 4, 2020, Roofing Designs had an executed contract for roofing and gutters for a project located at 7215 W Fuqua, Missouri City, Texas (the "<u>Edison Lofts Project</u>") and was performing this work.

8.    On or about May 4, 2020, I received a phone call from Licia Green Ellis, the wife of Harris County Commissioner Rodney Ellis. Licia stated that she was calling on behalf of an unidentified "friend" and requested that Roofing Designs reduce the contract price on the Edison Lofts Project by $260,000. I declined to do so.

9.    After that phone call, the prime contractor on the Edison Lofts Project and the City of Houston began retaliating against me. They attempted unsuccessfully to remove me from the Edison Lofts Project on three separate occasions. The City of Houston and prime contractor also complained that Roofing Designs' apprenticeship program failed to comply with Department of Labor requirements. I forwarded those complaints to James Carnes, the DOL Houston Apprenticeship Director. The Office of Apprenticeship of the Department of Labor ultimately found that our apprenticeship program met their criteria. The city and prime contractor also withheld monies due Roofing Designs. Eventually, Roofing Designs was able to finish the job and was paid in full.



10.   Upon information and belief, the FBI has an ongoing investigation into the City of Houston's Housing Authority ("HHA") and has interviewed former HHA board of commissioner members, including Phillis Wilson, who was removed after questioning the city's plans to spend $70 million to acquire environmentally contaminated land on both sides of Buffalo Bayou.

11.   Upon information and belief, Licia Green Ellis and former Housing Authority Chairman Lance Gilliam are, or were at the time, on the payroll of the two developers who stood to financially benefit from the city's acquisition of this land.

12.   Since I declined Licia Green Ellis' request to reduce my contract price on the Edison Lofts Project, the City, and in particular HCDD, have retaliated against me, including repeatedly requesting information that has already been provided and withholding information responsive to open records requests.

13.   On December 1, 2020, Roofing Designs and plaintiff Royal American Construction, Inc. ("Royal American") entered into a subcontract agreement for painting and roofing installation (the "Roofing Contract") for the project located at 900 Winston St, Houston TX 77009 (the "Project").

---

**Declaration of Chyna Gragg**



14. Because the Project is federally funded, Royal American is required to use MWSBEs for a percentage of the work and to comply with the city's reporting and compliance obligations.

15. On December 16, 2020, Roofing Designs and Royal American entered into another subcontract agreement for trim, hardware, and door installation for the Project (the "Carpentry Project").

16. A true and correct copy of the Roofing Contract and Carpentry Project are attached to my declaration as Exhs 1 and 2.

17. Roofing Designs commenced work on the Project in February 2021, continuing through the following months.

18. On or about May 5, 2021, Roofing Designs terminated Phillip Conner after he made a sexually suggestive comment to me. Unbeknownst to me, Royal American had previously engaged Conner and its superintendent, Keith Colwell, considered him a friend. Roofing Designs would not have had hired Conner had it known of this relationship, to avoid a potential conflict.

19. Immediately upon terminating Conner, Royal American began retaliating against Roofing Designs and blaming Roofing Designs for delays in construction. Although the Project was already several

months behind when Roofing Designs began roof work, Royal American blamed Roofing Designs for the delays.

20.   Examples of Royal American's retaliation include the following:

- Refusing to meet with GAF's roofing membrane inspector on May 17th on the roof to discuss items that were causing leaks, including improperly sized HVAC caps, failure to install siding, and improperly installed siding. GAF is the manufacturer of the roofing membrane, and its inspections are in connection with its no-dollar-limit warranty, which Roofing Designs was required to provide;

- Closing and locking the gate while GAF's inspector's truck was inside, preventing him from leaving;

- Failing to remedy items that were causing leaks, including improperly sized HVAC caps, failure to install siding, and improperly installed siding, and then blaming Roofing Designs for the leaks;

- Installing insulation over leaking areas and enclosing those areas with drywall, thus creating conditions conducive to mold for which it blamed Roofing Designs;

- Repeatedly calling Houston Police Department ("HPD") and tow trucks to tow Roofing Designs' and GAF inspector's vehicles, which were lawfully parked;

- Withholding the use of mud mats, thus requiring Roofing Designs to obtain its own mud mats and delaying its work, despite allowing other subs to use its mud mats;

- Moving Roofing Designs' boom lift and deliberately barricading it behind bricks, dumpster, water stations, scaffolding, and two portable toilets, preventing Roofing Designs from using it to perform necessary services;

- Failing to protect the TPO roofing membrane from vandalism, or alternatively, causing such vandalism, including cutting the TPO membrane and penetrating nails through the TPO roofing membrane;

- Refusing to cooperate with HPD's investigation of the vandalism;

- Failing to properly secure construction materials and allowing for Roofing Designs' materials to be stolen from the job site;

- Calling the police on one of Roofing Designs' painters for alleged sexual harassment, despite the alleged victim's statement that she had no desire to report Roofing Designs' painter to the police;

- Allowing one of their employees or subcontractors to brandish a knife and Roofing Designs' painter, Antonio Guerrero;

- Allowing Roofing Designs' painters' prep work, including installing plastic sheets on doors and windows, to be ripped and removed, requiring this to be redone multiple times;

- Requiring Roofing Designs to park down the street and unload materials, despite allowing other subs to unload on the job site; and

- Dusting my workers and me with a construction sweeper.

20. On June 7th, Royal American sent a notice letter to Roofing Designs, which included the following:



**Specifically, you are hereby directed to:**

- Schedule and begin the timely performance of roof work necessary to provide a "Dried in" roof. This includes all flashings and underlayment that may be required to prevent water intrusion into the building.
- Schedule and complete the exterior door installation that has been started but is incomplete.
- Schedule and begin wood trim and interior door installation at level 2 of building #6.
- Schedule and continue all caulking, waterproofing and preparation of exterior siding for painting.

21. Royal American made these demands despite having been told that water intrusions were the result of improperly installed and missing siding, and improperly sized HVAC caps. On May 17th, an inspector with GAF, Roofing Designs' warrantor for the roofs on the project, inspected the site. He informed Royal American of these issues and offered to go onto the roof with the superintendent to show him these problems. Royal American's superintendent declined the offer.

22. Despite Royal American's continuous harassment and intimidation, Roofing Designs continued its work at the Project. This included exterior door installation, preparation to paint the exteriors, and providing a "dried in roof," or as much as Roofing Designs had control over since issues GAF's inspector had previously identified had not been remedied by the subcontractors responsible.

23. Roofing Designs was unable to comply with the installation of trim and interior doors on Level 2 of Building 6 because other subcontractors did not have the area prepared for installation.

24. On or about June 14th, Roofing Designs arrived at the job site to find their work had been vandalized, the TPO roof membrane, flashing and underlay having been purposefully cut and punctured by nails. Roofing Designs immediately requested GAF to send an inspector to the site to document the damage.

25. On June 16th, Royal American terminated the Contracts for cause, falsely claiming Roofing Designs had failed to comply with its 72-hour notice.

26. I was surprised when Royal American terminated Roofing Designs because I know, by virtue of Roofing Designs' experience as an MWSBE, that the city must approve deviation requests and Roofing Designs never received notice of a deviation request.

27. I subsequently learned that Royal American submitted a deviation request to use a different MWSBE to complete Roofing Designs' work on the Project.

28. I appealed the City's approval of Royal American's deviation request. After an administrative hearing on August 11th, Marsha Murray, the OBO director, issued a letter ruling stating that HCDD and Royal American failed to provide Roofing Designs with the notice of intent to deviate that it should have received so that it could have an opportunity

CFG

to be heard prior to HCDD's removing Roofing Designs from the Project. [Doc. 33-6 at 23 – 25].

29.   Royal American has claimed that Roofing Designs had failed to remedy items in the May 17th inspection report prepared by GAF's inspector. [Doc. 33-1 at 4].  Although this report was dated May 17th, it was not issued until weeks later.  Roofing Designs did not receive this report in time to remedy the items mentioned in it prior to being terminated, nor was I aware of any items that could have been remedied prior to termination.

27.   I understand that Royal American is alleging that there are substantive defects with Roofing Designs' work.  I dispute these allegations and would like to have the opportunity to designate an expert witness to prepare a report rebutting these allegations.

28.   Over the past several months, I have repeatedly received communications through counsel from Melissa Sternfels requesting that I provide the contract with Pacesetters Personnel Services.  On or about August 27, 2021, I contacted Sal Parlante, the general manager, of Pacesetters and he confirmed, over the phone and in an email [Doc. 33-6 at 20], that Pacesetters does not have a written contract pertaining to the Project and that they typically rely upon their quote letter and

verbiage on the back of their daily and weekly tickets.  I requested Vanessa Stokes, my compliance consultant, to upload this information to LCP Tracker, the city's compliance portal, which she did.

29. However, despite our notifying the city and, through counsel, Royal American that Pacesetters does not have written contracts like Royal American and the city were requesting, I continued receiving demands from the city and Royal American, through their attorney Melissa Sternfels, to upload the Pacesetters contract.  [Doc. 33-6 at 10, 12, 13, 14].

30. I viewed Sternfels' demands as harassment, bullying, and an attempt to drive up my legal fees in this case.  Royal American's failure to pay Roofing Designs for our work has caused severe financial hardship. The Project constituted a large portion of Roofing Designs' work in early 2021, and Roofing Designs had to pay its subs out of pocket despite never receiving payment from Royal American.   Roofing Designs has exhausted its working capital as a direct result of Royal American's refusal to pay and legal fees incurred in this lawsuit. Moreover, due to Royal American's claim on co-defendant Insurors Indemnity Company, Roofing Designs currently lacks a surety company and thus is unable to bid on government projects, which

comprised a substantial portion of Roofing Designs' work. Roofing Designs has had to reinvent itself on the fly without bidding on government contracts. This has caused, and continues to cause, significant financial hardship to Roofing Designs, from which it has not yet recovered, and may never recover.

31.   Roofing Designs is currently represented in this lawsuit by two law firms: Pennell Law Firm PLLC and Burke Bogdanowicz PLLC. Kevin Pennell is attorney-in-charge and I am responsible for paying his invoices. Aaron Burke and his legal team at Burke Bogdanowicz PLLC were hired by my insurance carrier to defend Royal American's causes of action. They are handling the bulk of this lawsuit and I understand that they are billing my insurance carrier. I have not received, nor have I paid, any invoices from them. I understand that the scope of their engagement does not include compliance matters or anything pertaining to the city.

32.   In response to what I perceived to be Sternfels' inappropriate and repeated demands from Roofing Designs to provide the non-existent Pacesetters contract to the city, and without first vetting it with my attorneys in order to minimize my legal fees, I emailed individuals with the city directly and filed criminal complaints with the Harris County

District Attorney and FBI.  I did so out of frustration with what I perceived to be harassment and bullying.

33.    Doc. 33-3 is an email that I sent to city employees, Vanessa Stokes (my compliance consultant), and Argentina James of Hillday, whom I understand to be Royal American's compliance consultant.  In this email, I state that Sternfels' contacts with the Insurors Indemnity are under review with the Treasury Department.  This pertains a complaint that I filed, without first vetting with my attorneys to minimize legal fees, against Insurors Indemnity Company over what I believed to be their mishandling of Royal American's claims.  My statement about Sternfels reflects my sincerely held belief that her communications with Insurors Indemnity would be subject to the Treasury Department's review.

34.    Doc 33-4 is an email that I sent to individuals with the city, without first vetting it with my attorneys to minimize legal fees, in response to what I perceived to be repetitive and harassing emails in connection with a project Roofing Designs completed in January 2021.  When I sent that email, I had been receiving numerous requests from young Black men who wanted me to come to their homes to quote a roof repair.  I am of African descent and identify as Black, so the reference to "young Black

men" was not intended to be disparaging or discriminatory. It was simply descriptive. Since forming Roofing Designs in 2016, I have never received so many requests to come to a homeowner's house to quote a job, and especially not from the same demographic, as I have since this dispute blew up. This made me suspicious and afraid for my safety.

35.   Around this time, while unloading items from my truck in my driveway, a black Ford Mustang with tinted windows drove by, turned around, drove by again very slowly in front of me, and then sped off. This left me unnerved and extremely fearful for my safety.

36.   In that email [Doc. 33-4], I stated that I had received "countless legal threats from Atty Melissa Sternfels who has created a bullying environment against me in her numerous emails including City employees". The "countless legal threats" referred to her emails to my counsel pertaining to the compliance documents, particularly the non-existent Pacesetters contract. I viewed these as threats because she states that, if we do not comply with her demands, Royal American would pursue further legal action. I consider this to be bullying behavior as Roofing Designs had already notified the city that there was no Pacesetters contract.

37.     In that email [Doc. 33-4], I also stated that, if I am injured or murdered, "several persons will be investigated, along with Atty Melissa Sternfels as she has encouraged intimidation and bullying". I did not mean to accuse Sternfels of participating in a criminal enterprise to cause me physical harm, although in hindsight I realize that it could be interpreted in that way. Rather, what I was trying to communicate was that Sternfels' repeated demands for the non-existent Pacesetters contract was designed to harass and intimidate me and drive up my legal costs rather than a legitimate request for documents, and that she would be a witness in any investigation.

38.     I did call Royal American's attorney-in-charge and leave a message that I had initiated a criminal complaint against Sternfels. I did not consult my attorneys before doing so in an effort to keep my legal expenses down.

39.     I did file complaints, without first vetting them with my lawyers to minimize my legal fees, with the Harris County District Attorney and FBI [Doc 33-6]. In these complaints, I did identify Sternfels by name. I did this because I sincerely believed, and still believe, that (i) the FBI is already investigating the city's housing departments, including HHA and HCCD; (ii) my ongoing dispute with HCCD arising from my

refusal to discount my invoices by $260,000 on the Edison Lofts Project in response to Licia Green Ellis' request; (iii) the city's subsequent retaliation, (iv) the repeated requests for the Pacesetters contract when Roofing Designs and Pacesetters had unequivocally and repeatedly stated that no such contract exists; and (v) the OBO's determination that HCDD and Royal American improperly terminated me from the Project. I do believe, in my heart of hearts, that there is criminal activity going on in the City of Houston's public housing departments, including HHA and HCCD, in relation to federal funds, and I submitted these complaints based entirely on that belief. Nowhere in my criminal complaints do I ask the Harris County District Attorney or FBI to help me collect what I believe Roofing Designs is owed from Royal American, nor did I intend to leverage criminal investigative authorities to collect the debt.

40. Upon further reflection, I realize that I should not have identified Sternfels by name in those criminal complaints and in my emails to City of Houston employees, nor should I have stated that she acted in a fraudulent, unethical, or criminal manner. I hereby retract all allegations in my criminal complaints and all comments in third-party

communications accusing Sternfels of acting fraudulently, unethically, or criminally.

41. I regret any emotional distress that Sternfels has suffered as a result of my emails and criminal complaints alleging that she acted fraudulently, unethically, or criminally. I hereby apologize, without reservation, to Sternfels for alleging, in my emails and criminal complaints, that she acted fraudulently, unethically, or criminally. Going forward, I will refrain from accusing Sternfels of any fraudulent, unethical, or criminal conduct in any public comments or third-party communications unless I have first vetted those comments with my lawyers and gotten their approval.

42. I made the allegations against Sternfels due to the extreme emotional distress I experienced, and continue to experience, as a result of Royal American's refusal to pay for Roofing Designs' work and this lawsuit. On May 17th, I received emergency medical treatment at the Project jobsite at 900 Winston and I was transported to the emergency room for further treatment due to the stress that these events have caused me to suffer.

43. In its cease-and-desist letter [Doc. 33-1], Royal American cites an email, which I did not vet with my attorneys to minimize my legal fees,

that I sent to city employees wherein I state that "there is an ongoing investigation and pending litigation against Hillday". This refers to this lawsuit and my understanding of the litigation process, as I believed that Hillday would be a witness, its action would be investigated, and it was potentially a party.

44. As a result of the Edison Lofts Project and this Project, and in an effort to eliminate further conflicts, I have requested that the City of Houston delete all Roofing Designs' certifications, including MWSBE, Houston First, and Section 3.

45. I understand that Royal American claims that I contacted the elderly mother of one of its principals on her personal cellphone. I did not call anyone's mother on her cell phone.

46. The strange phone calls and text messages ceased after I disclosed the criminal complaints, nor have I observed any drive-bys or other suspicious conduct.

47. I still very much desire to present my side of the story to a jury of my peers and I respectfully ask this Court to allow me to do so.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Harris County, State of Texas on the 27th day of January 2022.

Chynethia "Chyna" Gragg

